USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/4/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
    UNITED STATES,

            -v-                          1:16-cr-00396-GHW

    JAMAL RUSSELL,               MEMORANDUM OPINION AND
                                          ORDER
                Defendant.
------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

### I. BACKGROUND

Mr. Jamal Russell was one of twenty-one defendants indicted in connection with a conspiracy to distribute crack cocaine in the Lincoln Houses housing project in East Harlem. Alone among the indicted defendants, Mr. Russell proceeded to trial on the charges against him. On September 26, 2017, Mr. Russell was convicted of each of the two counts against him. The jury found both that Mr. Russell had engaged in a conspiracy to sell crack cocaine in violation of Title 21 United States Code Section 846, and that he had used, carried or possessed a firearm in connection with, or in furtherance of, the drug conspiracy, in violation of Title 18 United States Code Sections 924(c)(1)(A)(i) and 2.

Mr. Russell's trial was short. Only five witnesses testified over the course of two days of testimony. One of the Government's principal witnesses was Mr. Kenneth Ashe, who testified pursuant to a cooperation agreement with the United States. The Government's case did not rely exclusively on the testimony of Mr. Ashe. However, his testimony was a substantial pillar of the Government's case. Mr. Ashe testified at length regarding the nature of the conspiracy, and Mr. Russell's role in it. Mr. Ashe's testimony strongly supported the firearms charge against Mr.

Russell—he was the only witness who testified that he had seen Mr. Russell with a firearm. And Mr. Ashe recounted vividly that Mr. Russell referred to himself as "Mr. Yellow Tape himself"—someone who not only possessed a gun, but was not afraid to use it.

Following the trial and post-trial motion practice, the Government discovered that it had inadvertently failed to produce to Mr. Russell's counsel 3500 materials containing the notes of a number of proffer sessions between the Government and Mr. Ashe. To their great credit, the Assistant United States Attorneys assigned to the case promptly informed Mr. Russell's counsel of that fact. By letter dated November 30, 2017, the Government notified Mr. Russell that the Government had not provided those notes, explained how the lacuna had come to their attention, and provided copies of the relevant materials. In the November 30 letter, anticipating the possibility of the motion raised here, the Government explained why it believed that its inadvertent failure to disclose the proffer notes did not justify a new trial. That set of preemptive arguments failed to dissuade Mr. Russell from bringing this motion, however.

Mr. Russell now argues that the Government's failure to provide 3500 materials warrants a new trial. He also argues that the proffer notes also contain information that the Government was required to produce in order to satisfy its obligations pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. For the reasons that follow, the Court agrees that the Government's inadvertent failure to provide the proffer notes requires a new trial.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 33, a district court may "grant [a defendant] a new trial if the interest of justice so requires." "Because motions for a new trial are disfavored in this Circuit the standard for granting such a motion is strict; that is, newly discovered evidence must be of a sort that could, if believed, change the verdict." *United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995). "This standard has been held to counsel in favor of granting a new trial motion only

where the new evidence 'would probably lead to an acquittal.'" *United States v. Gonzalez*, 110 F.3d 936, 943 (2d Cir. 1997) (quoting *United States v. Gilbert*, 668 F.2d 94, 96 (2d Cir. 1981)).

Mr. Russell's application for a new trial is based on the United States' inadvertent failure to provide him with notes from Mr. Ashe's proffer sessions pursuant to the Jencks Act. The Jencks Act, in relevant part, provides that:

> [a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.

18 U.S.C. § 3500(b). "[S]tatement" is defined in relevant part as "a written statement made by said witness and signed or otherwise adopted or approved by him." 18 U.S.C. § 3500(e). As is the common practice in the Southern District of New York, the United States agreed to provide 3500 materials in advance of trial, rather than waiting until after the testimony of the relevant witness, as required by the statute. The Government timely provided all Jencks Act materials to the defendant in advance of trial, with the exception of the inadvertently withheld notes of proffer sessions at issue here.

The Court evaluates the Government's inadvertent failure to provide information pursuant to the Jencks Act for harmless error. "The Supreme Court has stated that, '[s]ince courts cannot speculate whether (Jencks material) could have been utilized effectively at trial, the harmless-error doctrine must be strictly applied in Jencks Act cases.'" *United States v. Jackson*, 345 F.3d 59, 77 (2d Cir. 2003) (quoting *Goldberg v. United States*, 425 U.S. 94, 111 n. 21 (1976) (internal quotations omitted)). The standard of review has been clearly explained by the Second Circuit.

> Where . . . the government's Jencks Act violation is inadvertent, the defendant must establish that there is a significant chance that the added item would instill a reasonable doubt in a reasonable juror. Put another way, the failure to disclose may be disregarded if there is no reasonable probability that had the evidence been disclosed, the result would have been different. A 'reasonable probability,' in this context, means 'a probability sufficient to undermine confidence in the outcome.'

3

*Jackson*, 345 F.3d at 77 (internal quotations and citations omitted).

## III. DISCUSSION

The inadvertently withheld notes from Mr. Ashe's proffer statements meet even this stringent standard. Mr. Ashe was a critical witness for the prosecution—he was one of only five people who testified at the trial.[1] Among the notes inadvertently withheld are statements by Mr. Ashe that, if available to the defense, would have provided substantial grist for cross-examination of Mr. Ashe and impeachment of his credibility. A selection of three of those statements alone support the Court's conclusion there is a reasonable probability that had the evidence been disclosed, the result would have been different.

Notes of a proffer session held on October 6, 2015 discuss Mr. Ashe's participation in a robbery in 2014. The notes state that Mr. Ashe tried to identify the person with whom he committed the robbery to a detective. However, the notes indicate that Mr. Ashe "accidentally" identified another person as the person who committed the robbery with him. To explain the mistaken identification, the notes suggest, Mr. Ashe stated that the person who he falsely identified "looks like" the person with whom he committed the robbery. The defense might have made good use of evidence of Mr. Russell's prior misidentification of a co-conspirator in connection with another crime to undermine his identification of Mr. Russell. This information in the proffer notes might also have provided meaningful grist for impeachment of Mr. Ashe's asserted vivid memory of specific statements by Mr. Russell—statements that long predated Mr. Russell's lapse of memory or perception with respect to his co-conspirator in the 2014 robbery.

---

[1] To put the quantitative scale of Mr. Ashe's testimony in context, of the approximately 332 pages of witness testimony in the trial's transcript, approximately 109 pages, or 33%, consist of testimony by Mr. Ashe.

4

During the trial, Mr. Ashe testified that he had participated in a robbery of a clothing store, but that "he gave the clothes to other people he was with and he didn't really want" them. However, the notes from the October 6 proffer session regarding that robbery state that Mr. Ashe "kept clothes." The defendant argues plausibly that through his trial testimony, Mr. Ashe tried to paint himself as Robin Hood to enhance his credibility and likability with the jury. In any event, the statement attributed to Mr. Ashe during the proffer session could be read to directly contradict a factual statement made by Mr. Ashe during his trial testimony. Had the proffer notes been available to the defendant, he might have been able to make meaningful use of them to impeach Mr. Ashe's testimony, and to attack his credibility.

Inadvertently withheld notes from a May 14, 2015 proffer session also contradict another meaningful aspect of Mr. Ashe's trial testimony. At trial, Mr. Ashe testified that a rule followed by the co-conspirators in the charged conspiracy was that they would not cheat their customers. However, the May 14, 2015 proffer notes include statements by Mr. Ashe in which he seems to describe just that—ways that he shortchanged customers of his drug dealing business. Had this note been available for use by defense counsel, it might have led to effective impeachment of Mr. Ashe's testimony regarding the rules that governed the charged co-conspirators' conduct.

While the defendant points to a number of other potential uses for the inadvertently withheld proffer notes, these three examples alone are sufficient for the Court to conclude that a new trial is warranted here. It bears emphasis that the trial was very short. While the evidence against Mr. Russell presented at trial was compelling, much relied on the credibility of Mr. Ashe. The information contained in the inadvertently withheld proffer notes could have been used effectively to impeach the testimony of Mr. Ashe—and to undermine that substantial pillar of the Government's case.

5

## IV. CONCLUSION

As a result, the Court cannot conclude that the inadvertent failure by the United States to turn over these Jencks Act materials was harmless error.[2] Mr. Russell is entitled to a new trial; his motion requesting that relief is granted. The Court directs the parties to confer and to propose dates for a retrial. The parties' proposed dates should be submitted to the Court in a joint letter no later than May 10, 2018.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 587.

SO ORDERED.

Dated: May 4, 2018
New York, New York

GREGORY H. WOODS
United States District Judge

---

[2] Because the Court concludes that a new trial is warranted as a result of the inadvertent failure to disclose the proffer notes, the Court does not separately analyze the defendant's arguments under *Brady*.

6